DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| HARBORSIDE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2010-89 |
| | ) | |
| TRANSATLANTIC TRUST CORPORATION and | ) | |
| CIBC BANK AND TRUST COMPANY (CAYMAN) | ) | |
| LIMITED, as TRUSTEE of the TELSTAR | ) | |
| TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

ATTORNEYS:

**J. Daryl Dodson, Esq.**
Moore Dodson & Russell, P.C.
**Renee Marie André, Esq.**
Marjorie Rawls Roberts, PC
St. Thomas, VI
    *For the plaintiff,*

**Michael Sheesley, Esq.**
**Kevin F. D'amour, Esq.**
Kevin F. D'amour, P.C.
St. Thomas, VI
    *For the defendants.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants to dismiss
this action. In their motion, the defendants assert that the
plaintiff fails to state a claim for which relief may be granted
and exceeded the statute of limitations.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 2

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In the 1970s, St. Thomas Beach Resorts, Inc., ("St. Thomas Beach Resorts") built two condominium and time-share housing complexes in and around Bolongo Bay on St. Thomas, United States Virgin Islands. These two complexes, referred to as "Bolongo Bay Beach & Tennis Club East Wing Condominium" ("Bolongo Bay East Wing") and "Bolongo Bay Tennis Beach & Tennis Club West Wing Condominium" ("Bolongo Bay West Wing"), consist of twelve and twenty apartment units, respectively.

St. Thomas Beach Resorts also owned property adjacent to the sites of the Bolongo Bay East and West Wings, which is described as:

> Remainder Parcels No. 50 and 52, and Parcels No. 51, 53, 54, 55-1, 57 and 58 Estate Bolongo, No. 3 Frenchman's Bay Quarter, St. Thomas, Virgin Islands, as shown on P.W.D. Survey Maps Nos. A9-46-T65, G9-747-T64 and D9-730-T68.

(Amend. Compl., Ex. F) ("The Property").

On or about September 15, 1984, the defendant, Transatlantic Trust Corporation ("Transatlantic Trust"), a corporation controlled by Christian Kjaer ("Kjaer"), loaned St. Thomas Beach Resorts $3,000,000 (the "Loan"). As security for the repayment of the Loan, Richard Doumeng ("Doumeng"), as President of St. Thomas Beach Resorts, executed a mortgage (the "Mortgage"), covering the Property, in favor of Transatlantic Trust.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 3

In or about 1988, the Bolongo Bay Beach Resort was constructed on the Property.

In January of 1996, Doumeng and Kjaer entered into a settlement agreement (the "Doumeng-Kjaer Settlement Agreement").[1] Pursuant to the terms of the Doumeng-Kjaer Settlement Agreement, Doumeng would surrender his interests in St. Thomas Beach Resorts, which at that time owned the Bolongo Bay Beach Resort, as well as another resort known as the "Limetree Beach Hotel," to Transatlantic Trust. Doumeng would also transfer all his interests in an entity known as "Cowpet Beach Resort," a partnership which owned a resort known as the "Elysian Hotel." After this was done, Transatlantic Trust would transfer ownership of the Bolongo Bay Beach Resort to the plaintiff, Harborside Corporation ("Harborside"). Harborside is a corporation controlled by Doumeng and his family. Kjaer, through Transatlantic Trust, would retain ownership of the Elysian Hotel and the Limetree Beach Hotel.

Harborside and Transatlantic Trust agreed that two sales would be necessary in order for the Property to be transferred to Harborside in accordance with the parties' intent in the Doumeng-Kjaier Settlement Agreement. To effectuate these sales,

---

[1] Neither party has illuminated the Court as to the nature of the underlying dispute between Doumeng and Kjaer.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 4

Harborside and Transatlantic Trust entered into a contract on
January 31, 1996 (the "Contract").

The first sale would occur as a consequence of a
foreclosure action, brought by Transatlantic Trust against St.
Thomas Beach Resorts (the "Foreclosure Sale"). To that end, the
Contract notes that Transatlantic Trust "is the mortgagee of
[the Mortgage]" and "has declared the mortgage in default."
(Compl., Ex. A ¶ C.) The Contract further provides that
"[Transatlantic Trust] has notified [St. Thomas Beach Resorts]
of its default and will commence an action for debt and
foreclosure against [St. Thomas Beach Resort]." (Amend. Compl.,
Ex. A ¶ C.)

Upon successfully foreclosing on the Property,
Transatlantic Trust was then to acquire the Property at the
Foreclosure Sale. The Contract was made "specifically contingent
upon [Transatlantic Trust] receiving good and marketable title
by being the successful bidder at the foreclosure sale of the
Property." (Amend. Compl., Ex. A ¶ 3.2.) After acquiring title,
Transatlantic Trust was then to obtain an order from the court
confirming the sale. (Amend. Compl., Ex. A ¶ 3.1.)

The second sale (the "Private Sale") was to occur within
thirty days of Transatlantic Trust receiving an order confirming
the Foreclosure Sale. (Amend. Compl., Ex. A ¶ 3.1.) The Contract
provides that Harborside will pay Transatlantic Trust $3.7

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 5

million for the Property, payable in consecutive quarterly installments, "commencing once [Harborside] receipt of [*sic*] title to the Property . . . ." (Amend. Compl., Ex. A. ¶ 2.1.) (the "Property Sale") Harborside was to make no payments for the first quarter after the receipt of title. Harborside was to make an interest-only payment in the second quarter. (Amend. Compl., Ex. A ¶ 2.1.) Full payments were not to begin until the third quarter following the receipt of title. (Amend. Compl., Ex. A ¶ 2.1.) The payments were to be equal to the principle amount "amortized over a twenty (20) year period" plus interest. (Amend. Compl., Ex. A ¶ 2.1.) The entire amount would become due and payable on December 31, 2004. (Amend. Compl., Ex. A ¶2.1.)

On March 29, 1996, Transatlantic Trust initiated an action for debt and foreclosure against St. Thomas Beach Resorts in this Court (the "Foreclosure Action"). A motion for summary judgment against St. Thomas Beach Resorts was not filed until February 15, 2000. Judgment was granted shortly thereafter and a Writ of Execution issued on July 14, 2000.

On January 18, 2001, Transatlantic Trust purchased the Property at a foreclosure sale (the "Foreclosure Sale"), after bidding in its judgment of $7,389,835.65.

Transatlantic Trust did not move for an order confirming the Foreclosure Sale until July 27, 2004. An order confirming the Foreclosure Sale issued on August 5, 2004.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 6

Transatlantic Trust did not commence the Private Sale of the Property within by September 5, 2004. That is, within thirty days of the order confirming the Foreclosure Sale, as provided in the Contract. Rather, over two years later, on January 9, 2007, Transatlantic Trust conveyed all its interests in the Property to CIBC Bank and Trust Company (Cayman) Limited, as Trustee of the Telstar Trust ("CIBC").

To date, neither Transatlantic Trust nor CIBC has attempted to sell, or otherwise transfer the Property to Harborside.

Harborside filed its first Complaint in this matter on August 6, 2010 (the "First Complaint"). The First Complaint asserts four counts. Count One seeks specific performance of the Contract. Count Two seeks damages for Transatlantic Trust's alleged breach of the Contract. Count Three seeks an order reforming the contract to eliminate the full payment deadline of December 31, 2004. Count Four asserts a claim for unjust enrichment against Transatlantic Trust.

Harborside filed an amended complaint on October 19, 2011 (the "Amended Complaint"), which named CIBC as a defendant for the first time. The Amended Complaint asserts four counts, alleging the same causes of action as the First Complaint: Count One asserts a claim for specific performance; Count Two asserts a claim for damages arising from a breach of the Contract; Count Three asserts a reformation of the Contract; and Count Four

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 7

asserts a claim for unjust enrichment. Transatlantic Trust and
CIBC now move for dismissal for failure to state a claim for
which relief may be granted, pursuant to Federal Rule of Civil
Procedure 12(b)(6).

## II.  DISCUSSION

A complaint may be dismissed for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
When reviewing a motion to dismiss, the Court construes the
complaint "in the light most favorable to the plaintiff." *In re
Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.
2010). The Court must accept as true all of the factual
allegations contained in the complaint and draw all reasonable
inferences in favor of the non-moving party. *Alston v. Parker*,
363 F.3d 229, 233 (3d Cir. 2004).

## A. Statute of Limitations

"Normally, the statute of limitations is a defense that
cannot serve as a basis for granting relief under Rule
12(b)(6)." *Budzash v. Howell Twp.*, 451 F. App'x 106, 109 (3d
Cir. 2011) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). However, the Court of
Appeals for the Third Circuit has recognized that "an exception
is made where the complaint facially shows noncompliance with
the limitations period and the affirmative defense clearly
appears on the face of the pleading." *Id.* (citing *Oshiver*, 38

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 8

F.3d at 1384 n.1); *see also Cowell v. Palmer Twp.*, 263 F.3d 286,

291-93 (3d Cir. 2001) (considering the applicability of the

continuing violation doctrine in the context of a 12(b)(6)

motion).

**B.    Failure to State a Claim**

In order to survive a motion to dismiss, a plaintiff must

offer "enough facts to state a claim to relief that is plausible

on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007). A court must ask whether the complaint "contain[s]

either direct or inferential allegations respecting all the

material elements necessary to sustain recovery under *some*

viable legal theory." *Id.* at 569 (quoting *Car Carriers, Inc. v.*

*Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's

elements will not do." *Id.* at 555 (internal citations omitted).

Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must

allege facts that 'raise a right to relief above the speculative

level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).' " *Victaulic Co. v. Tieman*,

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 9

499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at

544).

    In determining the sufficiency of a complaint challenged

under Rule 12(b)(6), the Court must take the following three[2]

steps:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim." Second, the
> court should identify allegations that, "because they
> are no more than conclusions, are not entitled to the
> assumption of truth." Finally, "where there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679); *see also Great W. Mining*

*& Min. Co. v. Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010.)

### III. <u>ANALYSIS</u>

**A.**   <u>**Statute of Limitations**</u>

    **1.**   **The First Complaint**

    Transatlantic Trust and CIBC contend that the First

Complaint, filed on August 6, 2010, is barred by the statute of

limitations.

    In the Virgin Islands, an action on a contract, express or

implied, must be brought within six years of the date the cause

---

[2] *Iqbal* describes the process as a "two-pronged approach" but the
Supreme Court took note of the elements a plaintiff must plead to state a
claim before proceeding to its two-step approach. Accordingly, the Third
Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d
at 130.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 10

of action accrued. V.I. CODE ANN. tit. 5, § 31(3)(A) ("Section

31(3)(A)"). Transatlantic Trust and CIBC argue that it should

have been evident well before August 5, 2004--six years prior to

the filing of the Complaint--that Transatlantic Trust was

breaching the Contract by failing to timely prosecute the

Foreclosure Action against St. Thomas Beach Resorts. Harborside

counters that Transatlantic Trust did not fully repudiate the

contract until it failed to initiate the closing by September 5,

2004, thirty days after the issuance of the order confirming the

sale of the Property.

At the outset, the Court must determine when, based on the

pleadings, the alleged breach occurred. Generally, "[w]hen

performance of a duty under a contract is due any nonperformance

is a breach." RESTATEMENT (SECOND) OF CONTRACTS, § 235 (1981). In

determining when a cause of action accrues, "much depends on the

circumstances." *Henglein*, 260 F.3d at 213. " ' "[A]ccrual of the

cause of action' has not one eternal and exclusively correct

meaning, ordained by God or by the legislature. There is no

"infallible logic" that compels one application rather than

another.' " *Id.* at 213-14 (quoting 4 ARTHUR L. CORBIN, ON CONTRACTS

§ 989, at 969 (1951)).

Here, Transatlantic Trust and CIBC identify several

paragraphs in the Amended Complaint which suggest the breach

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 11

occurred more than six years before the initiation of this

action. For example, Harborside alleges that

> [Transatlantic Trust] did not move with reasonable
> promptness to commence the Foreclosure Action, to file
> a summary judgment motion in that proceeding, to
> obtain a writ of execution and proceed with the
> foreclosure sale once judgment was entered, to obtain
> an order confirming the outcome of the foreclosure
> sale, to obtain a Marshal's Deed, to schedule a
> closing on the Contract, or otherwise to [*sic*] perform
> its obligations under the Contract.

(Amend. Compl. ¶ 19.) This paragraph, along with paragraphs 20-

22, which also discuss Transatlantic Trust's dilatoriness in the

prosecution of the Foreclosure Action, are reincorporated into

each substantive count.

Harborside counters that, in spite of this language, the

breach did not occur until September 5, 2004, when Transatlantic

Trust failed to convey the Property within thirty days of the

issuance of the order confirming the foreclosure sale. Indeed,

in Count Two, Harborside alleges only that "Harborside has been

harmed by [Transatlantic Trust]'s failure to convey title to the

Property . . . within thirty days of entry of the Order

Confirming Sale . . . ." (Amend. Compl. ¶¶ 39.)

Whether Transatlantic Trust should have commenced the

Foreclosure Action at least six months before December 31, 2004,

is not the central inquiry for the purposes of statute-of-

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 12

limitations analysis in this contract action.[3] Significantly, there is no clear evidence on the face of the pleadings that the Contract provided dates by which Transatlantic Trust was to commence or conclude the Foreclosure Action.

What is clear is that Transatlantic Trust was to undertake the Private Sale within thirty days of Transatlantic Trust's receipt of an order confirming the Foreclosure Sale. What is equally clear is that Transatlantic Trust's failure to do so occurred within six years of the commencement of this action. Even if failure to commence the Foreclosure Action were a breach of the Contract, Transatlantic does not seriously contend, nor does it offer authority for the proposition, that such a default would have been the sole and exclusive breach that would delimit a breach of contract action for statute-of-limitations purposes. If that were the case any subsequent defaults--such as the failure to initiate the Private Sale--would be without consequence. The Court is not persuaded that the law countenances such an outcome.

---

[3] Indeed, it would appear that the acquisition of valid title, confirmed by the court, was a necessary prerequisite of the Private Sale. That confirmation was not within the control of the parties. It would thus seem to be a reasonable interpretation of the Contract to begin counting the time for the parties to perform only after a third party, like the Court, had concluded the necessary prerequisites for the Private Sale.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 13

As such, the Court will deny the motion of Transatlantic
Trust and CIBC to dismiss insofar as it seeks dismissal on the
ground that the limitations period has been exceeded.

**2.   <u>Relation Back of Amended Complaint</u>**

Transatlantic Trust argues that, even if the First
Complaint is not time-barred, the Amended Complaint should be
dismissed because it fails to relate back to the date of the
filing of the First Complaint.

In the Virgin Islands, an amendment may relate back to the
date of the filing of the original complaint when:

> (A) the law that provides the applicable statute of
> limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that
> arose out of the conduct, transaction, or occurrence
> set out--or attempted to be set out--in the original
> pleading; or
>
> (C) the amendment changes the party or the naming of
> the party against whom a claim is asserted, if Rule
> 15(c)(1)(B) is satisfied and if, within the period
> provided by Rule 4(m) for serving the summons and
> complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it
> > will not be prejudiced in defending on the
> > merits; and
> >
> > (ii) knew or should have known that the action
> > would have been brought against it, but for a
> > mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1) ("Rule 15(c)(1)"); *see also* V.I. Super.
Ct. R. 7. Here, Section 31(3)(1)(A) does not authorize relation
back. *See, e.g.*, *Jones v. L.S. Holdings, Inc.*, Civil. No. ST-06-

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 14

145 (JSC), 2010 V.I. LEXIS 10, at *4 (V.I. Super. Ct. Feb. 25, 2010). Instead, Virgin Islands courts apply Federal Rule of Civil Procedure 15(c).

Accordingly, the Court must first determine whether the claims asserted in the Amended Complaint arose out of the same occurrence that was set out in the First Complaint. This evaluation "normally entails a 'search for a common core of operative facts in the two pleadings.' " *Glover v. FDIC*, No. 11-3382, 2012 WL 3834666, at *4 (3d Cir. Sept. 5, 2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). This is more than a "mere" "identity of transaction test," such as the rules governing joinder of claims or parties, however:

> Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. Thus, only where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed. Conversely, amendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.

*Id.* (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 137, n.3 (1984)) (internal citations and quotation marks omitted).

Here, the Amended Complaint asserts the same two claims as the First Complaint: a claim for breach of contract, requesting as relief specific performance, damages, and reformation; and a

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 15

claim for unjust enrichment. These claims all stem from the

alleged failure of Transatlantic Trust to convey the Property as

contemplated in the Contract. The Amended Complaint does include

some additional allegations about the Mortgage. These

allegations, however, simply provide background information to

explain why Transatlantic Trust was acquiring the Property

through a foreclosure action. They are thus not material to the

claims asserted. Accordingly, it is clear that the claims in the

Amended Complaint stem from the same transaction and occurrence

as the First Complaint.

Next, the Court must determine whether CIBC received notice

of the action within the time frame contemplated by Federal Rule

of Civil Procedure 4(m) ("Rule 4(m)"). Fed. R. Civ. P.

15(c)(1)(C)(i). Here, the First Complaint was filed on August 6,

2010. CIBC was in fact served with the First Complaint on August

26, 2010.[4] Thus, CIBC had notice of this action well within the

120-day requirement of Rule 4(m).

Lastly, the Court must inquire whether CIBC knew or should

have known that it would have been named as a defendant were it

not for a mistake about the proper party's identity. "The

question under Rule 15(c)(1)(C)(ii) is not whether [the

plaintiff] knew or should have known the identity of . . . the

_____

[4] Harborside attempted to effect service on Transatlantic's last known
address. Evidently this address is now occupied or shared by CIBC.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 16

proper defendant, but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2493 (2010). "The reasonableness of the [plaintiff's] mistake is not itself at issue." *Id.* at 2494. As the Supreme Court has explained:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Id.*

Here, it is undisputed that on January 9, 2007, Transatlantic Trust assigned all its interests in the Property to CIBC. The ultimate relief sought by Harborside is to effectuate the transfer of the Property contemplated by the Contract. Thus, as CIBC now stands in the shoes of Transatlantic Trust with respect to the Property, it knew, or should have known, that but for Harborside's apparent lack of knowledge about the assignment, it should have been included as a defendant. Accordingly, the Court finds that the Amended Complaint relates back to the date of the filing of the First Complaint, and therefore is also not time-barred.

Harborside Corp. v. Transatlantic Trust Corp.
Civil No. 2010-89
Memorandum Opinion
Page 17

B.   **Failure to State a Claim**

    1.   **Counts One, Two, and Three: Breach of Contract Claims**

    In Count One of the Amended Complaint, Harborside asserts that the Contract has been breached and seeks and order compelling Transatlantic Trust of CIBC to convey the Property. In Count Two of the Amended Complaint, Harborside seeks damages for the alleged breach of the Contract. In Count Three of the Complaint, Harborside requests reformation of the Contract to postpone the balloon payment date so that Harborside can pay for the Property in installments, as was allegedly contemplated by the Contract.

    There are four essential elements of a breach of contract claim: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages. *See Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997); *see also* RESTATEMENT (SECOND) OF CONTRACTS §§ 235, 237, 240 (1965) (defining breach of contract).[5]

    Here, Harborside alleges that it had an agreement with Transatlantic Trust, the ultimate objective of which was to convey the Property. (Compl. ¶¶ 12-15.) Harborside further alleges that the Contract required Transatlantic trust to convey

_____

    [5] In the Virgin Islands, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." V.I. CODE ANN., tit. 1, § 4.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 18

the Property upon acquiring it through a foreclosure. (Compl.

¶¶ 15, 17, 24, 27.) Harborside claims that Transatlantic Trust

breached its duty under the Contract by failing to convey the

Property upon successful completion of the Foreclosure Action

and the Foreclosure Sale. (Compl. ¶¶ 27, 36, 39, 44.) Lastly,

Harborside claims it has been damaged by Transatlantic Trust's

alleged breach in four ways. First, Harborside has not acquired

the Property. (Compl. ¶ 36.) Second, Harborside, because it does

not own the Property, has not been able to seek various tax

benefits for operating the hotel on the property, costing it

tens of thousands of dollars in additional taxes. (Compl. ¶ 39.)

Third, Harborside has not been able to defend its interests in

the property, resulting in several residences on the property

being foreclosed on by a third party. (Compl. ¶ 39.) Lastly,

because the balloon payment date has passed, should the Property

now be conveyed to Harborside, it could be forced to pay for it

in one lump sum, not in installments as was originally intended.

(Compl. ¶ 44.)

These allegations are sufficient to make out a plausible

claim for relief for breach of contract. Accordingly,

Transatlantic Trust's and CIBC's motion to dismiss as to Counts

One, Two, and Three will be denied.

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 19

**2.   Count Four: Unjust Enrichment**

In Count Four of the Amended Complaint, Harborside asserts a claim for unjust enrichment.

There are four essential elements to a claim for unjust enrichment: (1) a clear and definite agreement, (2) the defendant's knowledge and intent to enter into the agreement, (3) a benefit conferred upon the defendant as a result of the defendant, and (4) that "equity and conscience" required the defendant return the benefit to the plaintiff. *See Government Guar. Fund. of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 460 (D.V.I. 1997); *Bank of Am., N. Am. v. Moyer*, 18 V.I. 220, 224 (V.I. Terr. Ct. 1982).

Here, as discussed above, Harborside has alleged that it had an agreement, into which Transatlantic Trust knowingly and intentionally entered. Harborside further alleges that, since the execution of the Contract, it has expended more than $6,000,000 in the maintenance, renovation, and improvement of the Property. (Compl. ¶ 51.) Harborside claims that, should the Contract not be enforced, equity and good conscience would require that this sum be returned to it. Otherwise, Transatlantic Trust would be unfairly permitted to profit from its failure to abide by the terms of the Contract. (Compl. ¶ 52.)

*Harborside Corp. v. Transatlantic Trust Corp.*
Civil No. 2010-89
Memorandum Opinion
Page 20

These allegations are sufficient to state a claim for
unjust enrichment. Accordingly, Transatlantic Trust's and CIBC's
motion to dismiss Count Four of the Amended Complaint will be
denied.

An appropriate order follows.

S_____
            **Curtis V. Gómez**
              **Chief Judge**